## Commonwealth vs. James J. Rodwell.

Middlesex. February 4, 1985. — May 6, 1985.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & Lynch JJ.

*Homicide. Witness,* Bias. *Constitutional Law,* Assistance of counsel.

The judge at a criminal trial was warranted in denying, without an evidentiary hearing, the defendant's motion to suppress a fellow prisoner's testimony as to inculpatory statements by the defendant, where the affidavit accompanying the motion presented no significant facts in support of the defendant's contention that the fellow prisoner was a government agent, and that, therefore, admission of the testimony would violate the defendant's rights under the Sixth Amendment to the United States Constitution. [698-699]

The issue whether a certain prosecution witness at a criminal trial was a government agent, and, thus, whether his proffered testimony as to the defendant's inculpatory statements to him was subject to suppression on constitutional grounds, could properly be raised only by a pretrial motion, and presented no jury question warranting the admission of evidence as to the witness's cooperation with police on other occasions. [699]

Where the jury at a criminal trial had been informed of the pendency of seven serious charges against a certain witness, it was within the judge's discretion to exclude additional testimony offered for the purpose of showing that the witness, by reason of favorable dispositions of earlier charges against him, would be biased in favor of the Commonwealth. [699-700]

It was within a judge's discretion to deny a criminal defendant's motion for a new trial without holding an evidentiary hearing, where the affidavits accompanying the motion raised no substantial issue bearing on his contention that he had been deprived of the effective assistance of counsel by reason of his attorney's failure to investigate the background of a certain prosecution witness. [701]

Indictment found and returned in the Superior Court Department on June 15, 1981.

The case was tried before *Alan J. Dimond,* J., and a motion for a new trial was heard by him.

*Steven J. Rappaport* for the defendant.

*Joseph P. Musacchio*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant appeals from his convictions of murder in the first degree, armed robbery, and the unlawful carrying of a firearm. The victim was shot and killed on December 3, 1978, in a motor vehicle in Somerville.

In the spring of 1981, one Francis X. Holmes, Jr., who had been arrested for another crime, told the police that he had been an accomplice of the defendant in committing the crimes in 1978. Holmes ultimately testified as an immunized witness at the trial. After the defendant had been arrested for the murder, he was held in the Middlesex County house of correction in Billerica (Billerica). While there, according to the testimony of a fellow prisoner, one David Nagle, the defendant admitted to the murder of the victim and described the circumstances of the crime. Nagle informed the police of what the defendant had told him.

Substantially all the defendant's arguments on appeal concern the admissibility of Nagle's testimony and alleged improper limitations on the defendant's cross-examination of Nagle. We affirm the convictions and, under G. L. c. 278, § 33E, find no reason to alter the verdict of guilty of murder in the first degree.

Because the circumstances of Nagle's trial testimony are important to an understanding of issues argued on appeal, we summarize the relevant portions of Nagle's trial testimony and the rulings of the judge concerning that testimony. On November 20, 1981, Nagle testified for the Commonwealth on direct examination. He admitted that he had been convicted of numerous crimes.[1] Nagle testified that he was being held in

---

[1] These crimes were larceny to which he pleaded guilty in 1972; assault by means of a dangerous weapon and larceny to which he pleaded guilty in 1972; larceny from the person to which he pleaded guilty in 1972; armed robbery, uttering, and larceny for which he was sentenced in 1972; larceny from a person to which he pleaded guilty in 1974; larceny from a person to which he pleaded guilty in 1975; larceny from a person in 1975 to which he pleaded guilty; larceny to which he pleaded guilty in 1976; and being present where heroin was found to which he pleaded guilty in 1980.

the Franklin County house of correction in Greenfield (Green-field,) having been transferred there from Billerica the previous July. He admitted that he had criminal charges pending against him in Middlesex and Suffolk counties. Nagle then testified that he met the defendant at Billerica in the latter part of May, 1981. They often discussed the defendant's pending murder case. Nagle said he had not then communicated with any police officer concerning the defendant's case. In these conversations, the defendant told Nagle, reciting details, that the defendant, Holmes, and another man had killed the victim during a drug "rip off." Nagle also testified that the defendant discussed means of assuring that Holmes would not testify against him. Nagle said that he first spoke to a law enforcement official about the murder on July 9, 1981, when he gave statements to Lieutenant Spartichino of the State police. Nagle testified that the lieutenant made no promises but, because of the pending charges against Nagle, said he would speak on Nagle's behalf and would write a letter explaining Nagle's cooperation.

On cross-examination, Nagle testified that he had four armed robbery charges pending against him in Suffolk County and two armed robbery charges and a kidnapping charge pending against him in Middlesex County. Nagle said he had been cooperating with the police on the Suffolk County cases, admitting his involvement and implicating others. Defense counsel then sought to inquire of Nagle concerning a specific instance of Nagle's cooperation with the police. On the Common-wealth's objection, there was a bench conference at which defense counsel said that he wanted to show Nagle was a government agent. Defense counsel made no reference to ad-mission of evidence of Nagle's cooperation with the police to show Nagle's bias. The judge said that such an argument should have been presented by a pretrial motion, that "[t]his does not go to the merits of the case," and that the defendant had made an insufficient showing that Nagle was a government agent. Nagle then testified that, prior to his July meeting with Lieutenant Spartichino, he had unsuccessfully requested that he be moved from Billerica to Greenfield to be near his child and her mother. Shortly after speaking to the lieutenant and requesting a trans-

fer, Nagle was transferred to Greenfield. Nagle further testified that he told Lieutenant Spartichino that "we're all in this together."

The only substantial issues the defendant raises on appeal concern his attempts to show that the trial judge improperly excluded evidence tending to show that the witness Nagle had previously cooperated with the Commonwealth in the conviction of other persons in exchange for favorable dispositions of criminal charges pending against him. In one aspect, the defendant relies on this evidence to claim that Nagle was a government agent and that, therefore, the defendant's admissions to Nagle, while the defendant was being held on the charges in this case, were inadmissible on the theory that the defendant was denied his Sixth Amendment right to assistance of counsel. This question was unsuccessfully presented on a pretrial motion to suppress and renewed at trial. This aspect of the defendant's argument is plainly before us on appeal.

The second aspect of the defendant's argument concerning Nagle's alleged, mutually beneficial past cooperation with the Commonwealth concerns a claim that the record of Nagle's cooperation and resulting favorable treatment was relevant to show Nagle's bias. Here the record does not show that the defendant offered that evidence on the issue of bias. He did not bring to the judge's attention a claim that this evidence was relevant to Nagle's bias, although he argues the point before us. Where the purpose of the offer of evidence on cross-examination is or should be apparent to a trial judge, we have not required a party to make specific reference to the purpose for which the evidence is offered. See *Commonwealth* v. *Martinez*, 384 Mass. 377, 380 (1981); *Commonwealth* v. *Ahearn*, 370 Mass. 283, 286 (1976). Where, however, the reason for the question is unclear or where the judge by his comments shows that the purpose is not apparent to him, we have required the proponent of evidence to be specific concerning the purpose for which evidence is offered. See *Commonwealth* v. *Cheek*, 374 Mass. 613, 615 (1978); *Commonwealth* v. *Donahue*, 369 Mass. 943, 951, cert. denied, 429 U.S. 833 (1976). In this case, the record demonstrates that the judge

did not perceive at trial the possible relevance of Nagle's past cooperation to the question of Nagle's bias, and it is clear that trial counsel's representations in support of the admission of that evidence only on the ground of Nagle's status as a government agent obscured the bias question. The bias aspect of the defendant's argument is thus here only for consideration on higher standards of appellate review[2] and on the denial of the defendant's motion for a new trial, in which he asserts the ineffective assistance of counsel in developing the bias point.

1. We consider first the defendant's argument that Nagle was acting as an agent of the Commonwealth so that Nagle's testimony concerning the defendant's statements to Nagle should have been suppressed. The defendant relies on cases involving persons acting as government agents, such as *United States* v. *Henry*, 447 U.S. 264, 272-273 (1980) (fellow inmate); *Massiah* v. *United States*, 377 U.S. 201, 205-206 (1964) (confederate, not incarcerated); and *United States* v. *Sampol*, 636 F.2d 621, 637-638 (D.C. Cir. 1980) (fellow inmate). Cf. *United States* v. *Walther*, 652 F.2d 788 (9th Cir. 1981) (Fourth Amendment case, search of luggage).

The trial judge dealt with the pretrial motion to suppress without conducting an evidentiary hearing, ruling that the affidavit accompanying the motion did not warrant such a hearing. The affidavit presented no significant facts in support of the claim that Nagle was a government agent. It only recited that Nagle had received the benefit of being transferred to Greenfield. That fact has little, if any, relevance to the question whether Nagle was a government agent at the times he and the defendant spoke at Billerica. Where there is no police connection with the private citizen to whom a defendant makes

[2] Where there is no objection below and thus the opportunity for appellate review in the normal course has not been preserved, we consider such an issue in review of a conviction of murder in the first degree under G. L. c. 278, § 33E, and in review of convictions of other crimes under a standard that is similar but arguably stricter and less broad than that applied under G. L. c. 278, § 33E. See *Commonwealth* v. *Chasson*, 383 Mass. 183, 189 n.2 (1981); *Commonwealth* v. *Cole*, 380 Mass. 30, 38-39 (1980); *Commonwealth* v. *Richmond*, 379 Mass. 557, 562 n.4 (1980). See also *Commonwealth* v. *Perez*, 390 Mass. 308, 319 (1983).

an admission, there is no Sixth Amendment barrier to the introduction of that evidence. See *Commonwealth* v. *Mahnke*, 368 Mass. 662, 676-678 (1975), cert. denied, 425 U.S. 959 (1976). The judge acted within his discretion in deciding the motion to suppress without an evidentiary hearing.

The judge was correct in concluding at trial that the question of Nagle's status as a government agent was one that should have been raised by a proper pretrial motion rather than before the jury. Thus, although Nagle's prior cooperation with the Commonwealth may have been relevant on the issue of Nagle's bias, a question we consider subsequently, Nagle's status as a government informer or agent allegedly warranting suppression of his testimony concerning the defendant's statements to him was not a jury question.

2. There was no error warranting reversal of the defendant's convictions on the ground that the judge excluded evidence relevant to Nagle's bias.[3] The defendant argues that barring inquiry into past favors denied him his rights to confront Nagle under the Sixth Amendment to the United States Constitution and under art. 12 of the Massachusetts Declaration of Rights. The defendant's claim is that Nagle was biased in favor of the Commonwealth and his prior cooperation with the Commonwealth tends to show that bias. The Commonwealth argues that evidence of Nagle's previous mutually beneficial cooperation was not relevant to the bias question. The fact that Nagle's past beneficial cooperation with the authorities may have involved criminal charges pending in counties other than the county in which the defendant was tried does not make irrelevant his understanding that by cooperation he could obtain favorable treatment from the Commonwealth. A prosecution witness's past cooperation with the Commonwealth, which has led to the apprehension and conviction of others and to favorable treatment of the witness, is relevant to the question of the

---

[3] We have already noted that the question whether evidence of Nagle's prior cooperation with the police was improperly excluded is not before us for appellate review in the traditional manner. See n.2 above and accompanying text.

witness's bias, an issue that is never collateral. *Commonwealth*
v. *Marcellino*, 271 Mass. 325, 327 (1930). We have suggested
that bias because of gratitude for past benefits from the Com-
monwealth might be relevant, but, at the same time, we indi-
cated that the pendency of criminal charges is a much stronger
source of human motivation. See *Commonwealth* v. *Connor*,
392 Mass. 838, 841 (1984). Here, of course, the pendency of
seven serious criminal charges against Nagle was fully dis-
closed to the jury. Beyond showing gratitude for past favors
is the defendant's desired demonstration that Nagle knew from
experience that cooperation with a prosecutor can produce
favorable treatment. See *United States* v. *Leja*, 568 F.2d 493,
498-499 (6th Cir. 1977) ("Evidence of past rewards shows
what an informant can expect by making a case"). Cf. *United
States* v. *Salsedo*, 607 F.2d 318, 321 (9th Cir. 1979) (particu-
lars of witness's previous work for Drug Enforcement Admin-
istration were cumulative where the jury had sufficient other
evidence of the witness's potential bias); *United States* v. *Elor-
duy*, 612 F.2d 986, 989 (5th Cir.), cert. denied, 447 U.S. 910
(1980) (exclusion of evidence of prior payments to informer
within judge's discretion).

If a witness's potential bias is already apparent to the jury
from other evidence, a trial judge has discretion to exclude
further evidence tending to show bias, not because it is irrele-
vant but because it is cumulative. See *Commonwealth* v. *Wil-
son*, 381 Mass. 90, 116 (1980); *Commonwealth* v. *Dougan*,
377 Mass. 303, 310 (1979); *Commonwealth* v. *Walker*, 370
Mass. 548, 572, cert. denied, 429 U.S. 943 (1976). *Common-
wealth* v. *Donahue*, 369 Mass. 943, 951 (1976). Here the jury
were well advised of Nagle's possible bias in favor of the
Commonwealth. Indeed, Nagle in effect admitted it. If the
question of bias had been presented to the judge and, in the
exercise of his discretion, the judge had excluded the evidence
of prior cooperation, there would have been no error. Applying
the standard of review appropriate for this issue (see n.2 above),
we conclude that the exclusion of evidence of Nagle's past
cooperation with the Commonwealth presents no ground for
reversal of the defendant's convictions.

3. In his motion for a new trial the defendant asserted that trial counsel was ineffective, in a constitutional sense, because he did not investigate Nagle's background. We construe the claim as asserting that such an investigation would have shown Nagle had been a government agent over a long time prior to the defendant's trial and, in any event, would have shown Nagle's bias. The trial judge decided this issue without conducting an evidentiary hearing. It was within his discretion to do so because the motion, and affidavits accompanying it, raised no substantial issue. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981). The affidavits accompanying the motion for a new trial state that various persons had been convicted or apprehended as a result of Nagle's past cooperation with the police, but they do not provide any basis for concluding that Nagle worked for the government by express or implied agreement at the time the defendant made admissions to him or at any other time. The trial judge properly characterized the affidavits as conclusory. *Id.* at 259.

The defendant has made no showing that he was denied the effective assistance of counsel under the appropriate constitutional standards. See *Commonwealth* v. *Fuller, ante* 251, 255-256 & n.3 (1985); *Commonwealth* v. *Bolduc*, 375 Mass. 530, 540 (1978).

4. The defendant challenges the prosecutor's closing argument to the jury as an improper personal comment on the defendant's guilt. The defendant made no objection to that closing argument. On the standard of review appropriate in such a situation (see note 2 above), there is no basis for granting the defendant relief. Indeed, we find nothing improper in the prosecutor's closing argument that would require reversal, if the issue were here for review in the normal course.

5. There is no basis under G. L. c. 278, § 33E, for granting the defendant relief from his conviction of murder in the first degree.

*Judgments affirmed.*